## SCOTT *v.* MADDOX *et al.*

1. While in a proceeding to establish a lost will the execution of the will must be proved by the three subscribing witnesses as in an application for the probate of a will in solemn form, the destruction or loss of the will and the facts necessary to rebut the presumption of revocation by the testator may be proved by other evidence.

2. "When a will can not be found after the death of the testator, there is a strong presumption that it was destroyed or revoked by the testator himself, and this presumption stands in the place of positive proof. He who seeks to establish a lost or destroyed will assumes the burden of overcoming this presumption by adequate proof."

3. On the trial of an application for the probate of a copy of an alleged lost will, the declaration of an heir of the decedent, to the effect that an original will had existed and that she had destroyed the same, is not, unless the declarant be a party to the proceeding, admissible in evidence in favor of the propounders. Under such circumstances the declaration is mere hearsay. Were the heir a party, it might be admissible as an admission binding upon her.

4. An exception to a refusal to allow a witness to answer a specified question presents no assignment of error with which this court can deal, when it does not appear what answer was expected. This is essential in order that the relevancy and materiality of the question may be passed upon.

Argued June 6, — Decided July 18, 1901.

Motion to establish copy of will—appeal. Before Judge Candler. DeKalb superior court. August 15, 1900.

*J. N. Glenn, H. C. Jones,* and *Green & McKinney,* for plaintiff. *Candler & Thomson,* for defendants.

COBB, J. Varner filed a petition in the court of ordinary, alleging that Ezekiel Reeves had departed this life testate, and that his last will was destroyed subsequently to his death, and praying that a copy of the will be established and admitted to record. To this petition certain persons, describing themselves as the heirs at law of Ezekiel Reeves, filed a caveat, setting up that at the time of the execution of the alleged will the testator was not of sound mind, that in executing the paper he acted under the undue influence of Varner, and that the failure to find the paper was due to the fact that the testator had destroyed it with the intention of revoking it. The court of ordinary refused to admit to record the paper alleged to be a copy of the will, and the case was appealed to the superior court. · On the trial there, at the conclusion of the evidence introduced by the propounders, the court passed an order dismissing the appeal and sustaining the judgment of the court of ordinary. This judgment was reversed by the Supreme Court, and a new trial ordered. *Scott* v. *McKee,* 105 *Ga.* 256. While the case was pending in the Supreme Court Varner died, and two of the legatees under the alleged will were made parties in this court in his place. When the case came on for trial a second time in the superior court, after the introduction of the testimony in behalf of the propounders, the court held that the evidence was insufficient to authorize the establishment of the paper as the last will of Ezekiel Reeves, and entered a judgment denying the application to probate the copy will and refusing to allow it to be admitted to record. The case is here again upon a bill of exceptions containing assignments of error upon the ruling just referred to, and upon other rulings made during the progress of the trial.

1, 2. The code declares: "If a will be lost or destroyed subsequent to the death, or without the consent of the testator, a copy of the same, clearly proved to be such by the subscribing witnesses and other evidence, may be admitted to probate and record in lieu of the original; but in every such case the presumption is of revocation by the testator, and that presumption must be rebutted by

proof." Civil Code, § 3289. It seems that there is nothing in this statute which is in conflict with the general rule on the subject therein dealt with, but that it is merely declaratory of the law as it stood at the time of the adoption of the code. See Pritch. Wills, § 50, p. 51, n. 3. In *Kitchens* v. *Kitchens*, 39 *Ga.* 168, the section of the code just quoted was construed, and it was there held that, while the execution of the will must be proved by the three subscribing witnesses in the same manner as in the probate of a will in solemn form, the contents of the paper, the destruction or loss of the same, and the facts necessary to rebut the presumption of revocation by the testator might be shown by any other evidence which would be sufficient to satisfy the conscience of the jury that the will was executed as testified by the subscribing witnesses, and was lost or destroyed since the death of the testator, or without his consent before his death. The rule laid down in *Kitchens* v. *Kitchens* was followed and approved in *Mosely* v. *Carr*, 70 *Ga.* 333. See also *Burge* v. *Hamilton*, 72 *Ga.* 624; *Gillis* v. *Gillis*, 96 *Ga.* 17. In the present case the three subscribing witnesses to the will were produced and sworn, and their testimony was such that the jury would have been authorized to find that the testator had executed a paper which he declared to be his last will, and that he was at the time of its execution mentally capable of making a will. There was also evidence from which a jury could have found that the copy will produced at the trial was a correct copy of the paper proved by the subscribing witnesses to have been executed as a will. It was shown that the paper so executed could not be found after the death of the testator. This placed upon the propounders the burden of proving that the paper was destroyed after the death of the testator, or that, if destroyed during his life, its destruction was without his consent. The only evidence in the record which can be looked to to determine this question is in substance as follows: The will was executed by the testator and then delivered to Varner, the nominated executor, who carried it away with him. After this the testator sent for the will, and it was returned to him by Varner. So far as the record discloses, the will was never seen by any one after its return. A few days before his death the testator told Varner that the will was in his room in a chest, which he pointed to with his finger, and said to Varner that he wanted him to see that the provisions of the will were car-

ried out after the testator's death. The testator was in an unconscious condition for several days before he died, but the evidence does not show that he fell into this condition immediately after the statement to Varner just referred to. The paper which had been executed as a will not being in existence at the time the application for the probate of it was made, the propounders were met at the threshold of their case with the presumption that the paper had been revoked by the testator, and it was incumbent upon them to overcome this presumption by proof. The rule is thus stated by Mr. Pritchard in his work on Wills: "When a will can not be found after the death of the testator, there is a strong presumption that it was destroyed or revoked by the testator himself, and this presumption stands in the place of positive proof. He who seeks to establish a lost or destroyed will assumes the burden of overcoming this presumption by adequate proof. It is not sufficient for him to show that persons interested to establish intestacy had an opportunity to destroy the will. He must go further and show, by facts and circumstances, that the will was actually fraudulently or accidentally lost or destroyed, against, and not in accordance with, the wishes and intention of the testator." Pritch. Wills, § 50, subsec. 2. Mr. Schouler says: "If a will last traced to the testator's custody can not be found at his death, the presumption that he destroyed it for the purpose of revocation outweighs the probability of its fraudulent and criminal destruction by another, when unsupported by any evidence except that of opportunity, though this latter circumstance is always worthy of consideration with other proof." Schoul. Wills (3d ed.), § 402, p. 446. See also 1 Jar. Wills (6th ed. Big.), *125; 1 Underhill, Wills, § 272; Page, Wills, § 442. Did the propounders carry the burden which the law placed upon them of showing by sufficient proof that the testator had not revoked the will, and that the failure to find it was due to its destruction subsequently to his death, or in his lifetime without his consent? It does not seem that the evidence was sufficient to overcome the presumption which arises in such cases. It not having been shown that the testator lapsed into a state of unconsciousness immediately after the declaration to Varner that he desired his will to be carried out and that the paper would be found in a certain place, the evidence in behalf of the propounders did not preclude the possibility of the testator's having formed an intention to revoke.

the will and carried such intention into effect by having the same destroyed between the time that he made the statement to Varner and the time that he lapsed into the state of unconsciousness which preceded his death. This being so, there was no error in refusing to establish the copy offered as the last will of Ezekiel Reeves and to allow the same to be admitted to record.

3. The propounders offered to prove that a daughter of the testator had said that she had destroyed her father's will after his death. The daughter referred to was not a party to the case. The court refused to admit the testimony, and we think this ruling was clearly right. The declarations of this daughter were merely hearsay as against other persons interested in the case, and as she was not a party to the record, they were not, in the present controversy, admissible under any rule of which we are aware.

4. The record contains assignments of error upon the refusal of the court to allow the propounders to ask certain witnesses different questions that are contained in the record. As it is not disclosed what answers were expected to these various questions, these assignments present no question for decision. *Cen. Ry. Co.* v. *Bond*, 111 *Ga.* 15, and cases cited.

*Judgment affirmed. All the Justices concurring.*